NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDUS SAMAD HAMILTON, | : |
| Plaintiff, | : Case No. 3:18-cv-2615 (BRM) (DEA) |
| v. | : |
| RALPH DOLCE, *et al.*, | : **OPINION** |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is *pro se* prisoner Plaintiff Abdus Samad Hamilton's ("Plaintiff") civil rights Complaint, filed pursuant to 42 U.S.C. § 1983. This Court previously granted Plaintiff's application to proceed *in forma pauperis*, and therefore, this Court must now screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A to determine whether it is frivolous or malicious, fails to state a claim upon which relief may be granted and/or because it seeks monetary damages from defendants who are immune from suit. For the reasons set forth below and for good cause appearing, the Complaint proceeds in part.

**I. BACKGROUND**[1]

Plaintiff names the following defendants in his complaint: (1) Ralph Dolce – Senior Investigator for S.I.D.; (2) Stephen D'Ilio – Administrator of New Jersey State Prison ("NJSP"); (3) Antonio Campos – Associate Administrator of NJSP; (4) Lt. S. Davis – Correctional Officer at NJSP; (5) Sgt. E. Spires – Correctional Officer at NJSP; and (6) T. Cortes – Disciplinary Hearing Officer at NJSP.

---

[1] The allegations of the complaint will be construed as true for purposes of this screening opinion.

Plaintiff was incarcerated at NJSP during the time the events giving rise to this complaint transpired. In October 2014, Plaintiff alleges he was accused of three false disciplinary charges by Dolce. More specifically, Plaintiff states Dolce falsely charged him with: (a) perpetrating a fraud, deception, confidence games, riots or escape plots; (b) attempting to give or offer any official or staff member a bribe or anything of value; and (c) conspiracy to disrupt institutional security. Dolce alleged Plaintiff and other inmates conspired to conduct financial transactions outside of department procedures to defeat existing controls to monitor and curtail such activity.

On October 8, 2014, Plaintiff alleged David conspired with Dolce by removing Plaintiff from general population at NJSP and placing him in pre-hearing detention. Thereafter, on October 9, 2014, Plaintiff alleges Spires conspired with Dolce by serving him with the three disciplinary reports he purportedly knew were false.

Plaintiff's disciplinary hearing was subsequently postponed several times. Ultimately, in November 2014, Cortes found Plaintiff guilty of conspiracy to bribe a staff member and conspiracy to disrupt institutional security. According to Plaintiff, the non-confidential evidence against him at the hearing included a note from Plaintiff to another inmate and a money order payable to Tanya Williams. Plaintiff states the rest of the evidence against him was confidential. Plaintiff was found not guilty of perpetrating a fraud. Cortes sanctioned Plaintiff to fifteen days detention, 365 days administrative segregation, 365 days loss of commutation time for the conspiracy to bribe a staff member charge. Cortes also sanctioned plaintiff to fifteen days detention, 365 days administrative segregation, and 300 days loss of television, phone and radio for the conspiracy to disrupt institutional security charge.

D'Ilio and Campos denied Plaintiff's appeals of these disciplinary guilty findings. Thereafter, Plaintiff filed an appeal to the New Jersey Superior Court, Appellate Division. On

March 1, 2017, the Appellate Division reversed the guilty finding as to both charges. The Appellate Division determined that "there [was] no substantial evidence petitioner was guilty of either prohibited act." *Hamilton v. New Jersey Dep't Corr.*, No. A-3103-14T3, 2017 WL 785837, at *3 (N.J. Sup. Ct. App. Div. Mar. 1, 2017).

According to Plaintiff, Defendants knowingly and intentionally violated the United States Constitution, the New Jersey Constitution, the Civil Rights Act, the New Jersey Administrative Code and the Universal Declaration of Human Rights. By way of example, Plaintiff contends he was subjected to numerous forms of harassment while serving 730 days in administrative segregation, including "unnecessary cell and strip search[es] on a daily or weekly basis." (ECF No. 1 at 12.) Plaintiff seeks monetary damages as relief.

## II. LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232

(3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Therefore, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### III. DECISION

#### A. Universal Declaration of Human Rights

Plaintiff attempts to assert that he is entitled to relief for Defendants' violations against him under the Universal Declaration of Human Rights. (*See* ECF No. 1 at 13.) However, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action." *United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (clarifying that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law"). Accordingly, Plaintiff's claim against all Defendants for violating the Universal Declaration of Human Rights is dismissed with prejudice for failure to state a claim upon which relief may be granted.

#### B. Equal Protection

Plaintiff also asserts that his equal protection rights were violated by Defendants' actions. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Therefore, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member

of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.* Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Prison inmates are not members of a protected class. *See Abdul–Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Plaintiff's equal protection claim can only proceed if he has sufficiently alleged facts under the "class-of-one" theory as stated in *Olech* and *Hill*.

Plaintiff's allegations fail to state a "class-of-one" equal protection claim under the applicable *Iqbal* pleading standard. Plaintiff's allegations do not name with any specificity any similarly situated person or people that were treated differently than him. Accordingly, Plaintiff's equal protection claims against the Defendants are dismissed without prejudice for failure to state a claim.

### C. Cruel and Unusual Punishment

Plaintiff next asserts Defendants violated his right under the Eighth Amendment to be free from cruel and unusual punishment. As one court has noted:

> The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Not all deficiencies and inadequacies in prison conditions, however, amount to a violation of a prisoner's constitutional rights. *See Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test.

> *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). Specifically, a prisoner must show that the alleged deprivation is sufficiently serious and that he has been deprived of the "minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). Only "extreme deprivations," however, are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8–9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).
>
> The practice of housing certain prisoners in isolation from other inmates is not a condition of confinement that violates the Eighth Amendment . . . . Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. *Hutto v. Finney*, 437 U.S. 678, 686, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978).

*Rosario v. Williams*, No. 13-1945, 2014 WL 338114, at *7 (E.D. Pa. Jan. 29, 2014).

In this case, Plaintiff does not give any indication he was deprived of the minimal civilized measure of life necessities. Plaintiff's guilty disciplinary finding resulted in the loss of television, phone and radio privileges. However, "inmates have no constitutional right to television," *see Edwards v. Yates*, No. 15-5780, 2016 WL 6562048, at *8 (D.N.J. Nov. 4, 2016) (citing *Lyons v. Wetzel*, No. 12-1357, 2012 WL 4033682, at *5 (M.D. Pa. July 17, 2012); *Riley v. Snyder*, 72 F. Supp. 2d 456, 460 (D. Del. 1999); *Scheanette v. Dretke*, 199 F. App'x 336 (5th Cir. 2006); *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995)), nor does Plaintiff have a constitutional right to a radio while incarcerated, *see, e.g.*, *Ford v. Superintendent MRRJ*, No. 17-457, 2017 WL 6328162, at *2 (W.D. W. Va. Dec. 11, 2017). Finally, Plaintiff's loss of telephone privileges, without more, does not amount to a violation of the Eighth Amendment's protections to be free from cruel and unusual punishment.[2] *See Brown v. Sadowski*, No. 08-4489, 2019 WL 248916, at *4 (D.N.J. Feb.

---

[2] This Court does not construe the Complaint as asserting a First Amendment claim for his lack of telephone access. To the extent Plaintiff intended to include such a claim, he is free to assert such

7

9, 2009) (collecting cases and noting that loss of telephone privileges does not amount to an Eighth Amendment violation to be free from cruel and unusual punishment).

Accordingly, Plaintiff's Eighth Amendment claims against Defendants is dismissed without prejudice for failure to state a claim upon which relief may be granted.

### D. Retaliation

This Court construes Plaintiff's Complaint as attempting to bring a retaliation clam. More specifically, Plaintiff asserts he was retaliated against by the filing of the prison disciplinary charges against him because he refused to become a confidential informant.

> "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him."

---

a claim in a proposed amended complaint. However, at least one court in this District has noted that:

> courts have stated that where a prisoner plaintiff has alternative means of communicating with persons outside of the prison—by mail, for example—denial of telephone access does not violate the Constitution. *See* [*Almahdi v. Ashcroft*], 310 F. App'x 519, 521-22 ("Almahdi makes no assertion – and there is no evidence – that he lacked alternative means of communicating with persons outside the prison . . . . Accordingly the telephone restrictions did not violate the First Amendment.") (internal citation omitted); *see also Johnson v Bledsoe*, No. 12-0097, 2012 WL 258680, at *2 (M.D. Pa. Jan. 27, 2012) ("More recent decisions have concluded that where an inmate has available, alternative means of communicating with the outside world, i.e., mail privileges, a § 1983 action alleging improper denial of telephone access was subject to dismissal.") (citing *Acosta v. McGrady*, No. 96-2874, 1999 WL 158471, at *7 (E.D. Pa. Mar. 22, 1999); *Pitsley v. Ricks*, No. 96-0372, 2000 WL 262023, at *5 (N.D.N.Y. Mar. 31, 2000); *Ingalls v. Florio*, 968 F. Supp. 193, 203 (D.N.J. 1997)).

*Mckinney v. Cucinella*, No. 15-7442, 2016 WL 3191241, at *4 (D.N.J. June 2, 2016.)

*Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). With respect to the third element, a plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse action to sufficiently state a retaliation claim. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (citing *Cater v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002)); *Rauser* [*v. Horn*, 241 F.3d [330,] 333 [(3d Cir. 2001)]. Furthermore:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334), "[t]he mere passage of time is not legally conclusive proof against retaliation." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

The statute of limitations to bring a retaliation claim under § 1983 is two years. *See Fabian v. Allegheny Cty.*, No. 15-292, 2015 WL 7571936, at *2 (W.D. Pa. Nov. 24, 2015) (citing *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). If the allegations in the complaint are discrete, they give rise to a cause of action at the time it occurred. *See O'Connor v. City of Newark*, 440 F.3d 125, 128-29 (3d Cir. 2006).

In this case, the purported adverse action giving rise to Plaintiff's retaliation claim occurred in 2014 when Dolce purported submitted fabricated and false disciplinary charges against Plaintiff. Plaintiff did not file this Complaint until February 2018. Accordingly, Plaintiff's retaliation claim is untimely, and this claim is dismissed without prejudice.

**E. Due Process**

Plaintiff next attempts to bring a due process claim against Defendants. This Court construes this due process claim as arising from Plaintiff's placement in administrative segregation for two years following the initial guilty disciplinary charge findings.

> Placement in administrative segregation, by itself, does not violate the Constitution. "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (quoting *Jones v. N.C. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). "[S]egregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. "[A]dministrative segregation, without more, does not deprive inmates of a constitutionally cognizable liberty interest." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Instead, in deciding "whether an inmate's placement in segregated housing triggers a legally cognizable interest [,] courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014).

*July v. D'Ilio*, No. 16- 4568, 2017 WL 3139827, at *2 (D.N.J. July 24, 2017).

In this case, Plaintiff not only alleges placement in administrative segregation for two years, he also claims he was subject to unnecessary cell and strip searches on a daily or weekly basis while incarcerated in administrative segregation. Consequently, this is not a case where a plaintiff simply alleges placement in administrative segregation. Rather, Plaintiff has alleged placement plus conditions that purportedly were significantly more restrictive than those imposed

10

on other inmates through his strip search allegations. Therefore, at this early stage, Plaintiff's due process claim shall be permitted to proceed past screening.[3]

**F. State Law Claims**

Plaintiff next attempts to bring several state law claims against Defendants. Each will be considered in turn.

*i.   New Jersey Criminal Statutes*

Plaintiff first argues Defendants violated:

> N.J.S.A. 2C:5-2 (Conspiracy); N.J.S.A. 2C:12-3 (Terroristic Threats); N.J.S.A. 2C-28-3 (Falsification of an unsworn statement); N.J.S.A. 2C:28-6 (Tampering With or Fabricating Physical Evidence); N.J.S.A. 2C:28-7 (Tampering With Public Records or Information); and N.J.S.A. 2C:30-2 (Official Misconduct)[.]

(ECF No. 1 at 14-15.)

These are state criminal statutes. As a civil matter, plaintiff does not have standing to assert these criminal actions against the defendants in this Court. *Accord Itiowe v. Daniel*, No. 16-7777, 2017 WL 4179811, at *1 n.4 (D.N.J. Sept. 21, 2017) (citing *Ali v. Jersey City Parking Auth.*, 2014 WL 1494578, at *4 (D.N.J. Apr. 16, 2014), *aff'd*, 594 F. App'x 730 (3d Cir. 2014)). Accordingly, these claims are dismissed with prejudice for failure to state a claim upon which relief may be granted.

---

[3] Unlike Plaintiff's retaliation claim, this Court does not find his due process claim is untimely at this early stage. Indeed, Plaintiff alleges he was in administrative segregation for two years presumably starting from October 2014. His due process claim could be construed as "ongoing" such that he was presumably in administrative segregation within the prior two years of filing this complaint in February 2018. *See, e.g.*, *July v. D'Ilio*, No. 16-4568, 2017 WL 3139827, at *1 (D.N.J. July 24, 2017) (citing *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)).

> ii. *New Jersey Administrative Code*

Plaintiff also seeks to raise claims against Defendants under the New Jersey Administrative Code. Indeed, Plaintiff alleges:

> The unlawful actions described above in the complaint violates state rules, policies, regulations for the administration, management and operations of correctional facilities within the state of New Jersey as set forth in Title 10A of the New Jersey Administrative Code.

(ECF No. 1 at 44.)

Besides citing generally to Title 10A of the Administrative Code, Plaintiff's complaint is completely silent regarding what specific and express provisions of the Administrative Code Defendants purportedly violated. As such, this Court finds Plaintiff's Complaint fails to state with any facial plausibility that he would be entitled to relief on this claim. Therefore, the Complaint fails to state a claim under the *Iqbal/Twombly* pleading standard. Accordingly, Plaintiff's claim arising under the New Jersey Administrative Code is dismissed without prejudice for failure to state a claim.

> iii. *New Jersey Constitution/New Jersey Civil Rights Act*

Finally, Plaintiff raises claims against Defendants under the New Jersey Constitution/New Jersey Civil Rights Act. As one court has noted:

> The New Jersey Civil Rights Act (hereinafter "NJCRA") was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions. *Slinger v. New Jersey,* No. 07–5561, 2008 WL 4126181, *5–6 (D.N.J. Sept. 4, 2008), *rev'd on other grounds* 366 F. App'x 357 (3d Cir.2010); *Armstrong v. Sherman,* No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010). NJCRA provides, in pertinent part, a private cause of action to
>
>> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive

> rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.
>
> N.J.S.A. 10:6–2(c). This district has repeatedly interpreted NJCRA analogously to § 1983. *See Chapman v. New Jersey,* No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart"); *Slinger,* 2008 WL 4126181 at *5 (noting NJCRA's legislative history, this district utilized existing § 1983 jurisprudence as guidance for interpreting the statute); *Armstrong,* 2010 WL 2483911 at *5 ("[T]he *444 New Jersey Civil Rights Act is a kind of analog to section 1983"). Therefore, the Court will analyze Plaintiffs' NJCRA claims through the lens of § 1983. *See Hedges v. Musco,* 204 F.3d 109, 121 n.12 (3d Cir.2000) (concluding that New Jersey's constitutional provision concerning unreasonable searches and seizures is interpreted analogously to the Fourth Amendment) (citing *Desilets v. Clearview Reg'l Bd. of Educ.,* 265 N.J. Super. 370, 627 A.2d 667, 673 (N.J. Super. Ct. App .Div.1993) ("We are not persuaded that the New Jersey Constitution provides greater protection under the circumstances of this case than its federal counterpart. We note that in its [*New Jersey v.*] *T.L.O.* [469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985) ] opinion the New Jersey Supreme Court analyzed the search and seizure issue under the Fourth Amendment to the United States Constitution, and did not suggest that New Jersey's organic law imposed more stringent standards")); *see also Norcross v. Town of Hammonton,* 2008 U.S. Dist. LEXIS 9067 (D.N.J. Feb. 5, 2008) ("The New Jersey Supreme Court does not appear to have spoken on whether excessive force is a context where state law provides greater protection than does federal law. This Court sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution").

*Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011).

As Plaintiff's New Jersey Constitution/Civil Rights Act claims are analyzed analogously to his federal § 1983 claims, Plaintiff's New Jersey Constitution/Civil Rights Act claim may proceed against Defendants, but only as it relates to his due process violations—the only § 1983

claim that has been proceeded. The remainder of Plaintiff's New Jersey Constitution/Civil Rights Act claims are dismissed without prejudice for failure to state a claim upon which relief may granted.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiff's federal due process and corresponding state law claim under the New Jersey Constitution/Civil Rights Act shall **PROCEED**; Plaintiff's remaining claims under the United States Constitution and corresponding claims under the New Jersey Constitution/Civil Rights Act are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted; Plaintiff's claim under the New Jersey Administrative Code is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted; Plaintiff's claim under New Jersey's Criminal Code is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted; Plaintiff's claim under the Universal Declaration of Human Rights is **DISMISSED WITH PREJUDICE** for failure to state a claim. An appropriate Order will follow.

Dated: September 19, 2019        */s/Brian R. Martinotti*
                                 **HON. BRIAN R. MARTINOTTI**
                                 **UNITED STATES DISTRICT JUDGE**